UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| TRAVIS COSTA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 21-CV-10154-AK |
| SAKI, LLC; and ) | |
| ) | |
| STEVEN SCHNITZER, Manager; ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT AS SANCTION**

**A. KELLEY, D.J.**

Plaintiff Travis Costa ("Plaintiff" or "Costa") has brought this action against his former employer, Defendants Saki, LLC and its manager and sole shareholder Steven Schnitzer (collectively, "Defendants"), alleging retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3); the Massachusetts Wage Act, M.G.L. c. 149 § 148A; and the Massachusetts Overtime Law, M.G.L. c. 151 § 19. [Dkt. 12 ("Am. Compl.") at ¶¶ 41–58]. For the reasons set forth below, Plaintiff's Motion for Default Judgment as Sanction [Dkt. 28] is **GRANTED**.

I.   **FACTUAL BACKGROUND**

Plaintiff is a seasonal resident of Provincetown, MA, where he worked as a server for Defendants for seven summers from 2013 until 2020. [Dkt. 12, Am. Compl. at ¶¶ 2, 7–8]. Plaintiff's amended complaint states that in years prior to 2020, he worked approximately 40

1

hours per week for Defendants, while also holding another job at an unaffiliated restaurant. [Id. at ¶ 13]. However, in 2020, Plaintiff claims he did not pursue a second job due to the Covid-19 pandemic's effect on the restaurant industry, but still relocated to Provincetown for the summer in reliance on Defendants' promise of employment for the entire summer, including overtime hours. [Id. at ¶¶ 14–15]. Plaintiff alleges he began working for Defendants on June 29, 2020 and worked approximately 80 hours in his first week, yet received payment for only 43.09 hours. [Id. at ¶¶ 16–20]. Accordingly, Plaintiff claims he received only 3.09 hours of overtime pay, despite having worked a total of approximately 40 hours of overtime, and that he was not even compensated at the usual hourly rate for the additional 36.91 overtime hours. [Id. at ¶¶ 21–22].

Plaintiff asserts other employees who worked over 40 hours per week were similarly not paid their overtime owed, and that this underpayment has been a historical problem with the defendant employers. [Id. at ¶ 23]. On July 10, 2020, Plaintiff alleges he complained to Defendant Schnitzer at a staff meeting, and that Schnitzer later approached him privately and informed him he would be receiving a check to cover his wages owed—which Plaintiff did in fact later receive. [Id. at ¶¶ 24–26]. However, Plaintiff states he has reason to believe he was the only employee who received such a payment. [Id. at ¶¶ 27–29]. Moreover, he claims that when shift schedules were posted just two days later, on July 12, 2020, Plaintiff was not provided with any shifts for the upcoming week, nor for the remainder of the summer. [Id. at ¶¶ 31–32]. He states that in his entire history of working for Defendants, he had never been eliminated from the shift schedule previously. [Id. at ¶ 33]. As such, Plaintiff has brought claims of unlawful retaliation against Defendants under both federal and state law. [Id. at ¶¶ 41–58]; see also 29 U.S.C. § 215(a)(3); M.G.L. c. 149 § 148A; M.G.L. c. 151 § 19.

In bringing this action, Plaintiff seeks all lost wages and benefits, including back pay and front pay, damages for emotional distress, treble damages pursuant to the M.G.L. violations, liquidated damages under the FLSA, pre- and post-judgment interest, and attorneys' fees and costs. [Am. Compl. at 8].

## II.   PROCEDURAL HISTORY

Plaintiff filed his original complaint in this matter on January 28, 2021, seeking "to recover damages suffered due to his unlawful termination in reprisal for making a complaint about Defendants' failure to pay earned wages, including overtime wages, for work he performed." [Dkt. 1]. On March 31, 2021, Defendant Saki, LLC filed an answer [Dkt. 9], and Defendant Steven Schnitzer filed a motion to dismiss [Dkt. 10]. Subsequently, Plaintiff filed an amended complaint [Dkt. 12] on April 8, 2021, after which both defendants filed answers [Dkts. 13, 14], and the previously filed motion to dismiss was terminated as moot [Dkt. 15].

The first pretrial schedule was entered on May 24, 2021 [Dkt. 20], providing deadlines for initial disclosures by July 1, 2021; amendments to pleadings by August 13, 2021; fact discovery to be completed by February 1, 2022; and dispositive motions to be filed by February 22, 2022. [Id.]

On July 21, 2021, Plaintiff served each defendant with a request for production of documents [Dkts. 29-1, 29-2] and a set of interrogatories [Dkts. 29-3, 29-4], and requested that Defendants respond on or before September 20, 2021. [Dkt. 29 at 1; Dkt. 29-20 at ¶ 1]. Counsel for Defendants, Attorney Terrence Hurrie, confirmed receipt of these requests via email several days later and requested Microsoft Word versions of the documents, which Plaintiff's counsel, Attorney Kathleen Fisher, in turn provided. [Dkt. 29 at 2; Dkt. 29-5]. Nevertheless, Defendants

3

missed the deadline [Dkt. 29 at 2; Dkt. 29-20 at ¶ 4]. On September 27, 2021, Attorney Fisher emailed Attorney Hurrie to request an update on the status of Defendants' discovery responses. [Dkt. 29 at 2; Dkt. 29-5]. There was no response. [Dkt. 29 at 2; Dkt. 29-6]. So, on September 30, 2021, Plaintiff's counsel followed up with Attorney Hurrie, after which he requested a thirty-day extension, until October 20, 2021, which Plaintiff's counsel granted "as a courtesy." [Dkt. 29 at 2].

However, even with the extension, that second, October 20, 2021, deadline also passed without response from Defendants and their counsel. [Id.; Dkt. 29-20 at ¶ 8]. Attorney Fisher reached out again on October 25, 2021, requesting that discovery responses be provided by end of day on October 27, 2021. [Dkt. 29 at 2; Dkt. 29-20 at ¶ 8]. Again, there was no response from Defendants. [Dkt. 29 at 2; Dkt. 29-20 at ¶ 10]. On October 28, 2021, Plaintiff's counsel emailed defense counsel yet again to ask for a status update. This time, Attorney Bruce Bierhans, co-counsel for Defendants and the only named partner of defense counsel's law firm, responded stating Attorney Hurrie "would connect shortly." [Dkt. 29 at 2; Dkt. 29-7]. Later that same day, Attorney Hurrie called Attorney Fisher to request another extension, "citing a heavy workload and that his client was still gathering responsive information or documents." [Dkt. 29 at 2; Dkt. 29-20 at ¶ 13]. In this same communication, Attorney Hurrie further assured Attorney Fisher that responses were "underway." [Dkt. 29 at 2; Dkt. 29-20 at ¶ 13]. Again, "as a courtesy," Plaintiff's counsel granted yet another extension, until November 30, 2021. [Dkt. 29 at 2; Dkt. 29-20 at ¶ 14]. But counsel for Plaintiff was crystal clear—this would be the last extension, as Plaintiff needed to notice and take depositions in advance of the February 1, 2022 deadline for close of fact discovery. [Dkt. 29 at 2–3; Dkt. 29-20 at ¶ 15].

On the day of that final, November 30, 2022 deadline as agreed to by the parties, Attorney Fisher noticed Defendants' depositions and reminded Attorney Hurrie that Defendants' discovery responses were due by the end of the day. [Dkt. 29 at 3; Dkt. 29-8]. Nevertheless, Defendants still failed to respond at all. [Dkt. 29 at 3; Dkt. 29-20 at ¶ 17]. So, on December 2, 2021, Attorney Fisher notified Attorney Hurrie that if discovery responses were not provided by December 3, 2021, Plaintiff would need to file a motion to compel. [Dkt. 29 at 3; Dkt. 29-20 at ¶ 18]. Once again, Defendants did not respond to this communication. [Dkt. 29 at 3; Dkt. 29-20 at ¶ 18].

Consequently, on December 6, 2021, Attorney Fisher emailed Attorney Hurrie to request a discovery conference pursuant to Local Rule 37.1. [Dkt. 29 at 3; Dkt. 29-20 at ¶ 17]. Four days later, Attorney Hurrie sent the following response: "I am diligently working with our client to complete the discovery requests." [Dkt. 29 at 3; Dkt. 29-20 at ¶ 20]. However, during a discovery conference on December 15, 2021, Attorney Hurrie represented that he had not yet received discovery responses from his client and was unable to provide a date when discovery would be produced. [Dkt. 29 at 3–4; Dkt. 29-20 at ¶¶ 22, 24]. In response, Attorney Fisher informed Attorney Hurrie that, if discovery responses were not provided by 12:00 PM on December 16, 2021, she would file a motion to compel. [Dkt. 29 at 4; Dkt. 29-20 at ¶ 25].

True to her word, when Defendants yet again failed to produce *any* discovery responses, Attorney Fisher filed a motion to compel on the afternoon of December 16, 2021. [Dkt. 29 at 3–4; Dkt. 29-20 at ¶¶ 26–27]. Defendants did not file any opposition to Plaintiff's motion to compel within the 14-day period prescribed by the Local Rules (nor did they ever submit such a filing). [See generally Docket; Dkt. 29 at 4; Dkt. 29-20 at ¶ 28]. Accordingly, in light of both its

5

status as an unopposed motion and the evident failures of Defendants to meaningfully participate in discovery, the Court granted Plaintiff's motion to compel on January 13, 2022. [Dkt. 26].

Soon thereafter, on January 19, 2022, Attorney Fisher informed Attorney Hurrie that Plaintiff would be filing a motion for default judgment if Defendants did not comply with the Court's order compelling discovery. [Dkt. 29 at 4; Dkt. 29-20 at ¶ 30]. One day later, Defendant Schnitzer appeared for a remote deposition via videoconference "approximately one hour late, in beach attire, via a cell phone with low battery, outside at a beach resort in Belize." [Dkt. 29 at 4; Dkt. 29-20 at ¶ 31]. Defendant Schnitzer testified that he did not know where "even basic time and pay records" requested by Plaintiff were located [Dkt. 29-20 at ¶ 33], despite having been notified of his deposition nearly two months prior to its taking place [id. at ¶ 32]. Separately, on January 21, 2022, Plaintiff's counsel deposed Brennan Kavanagh ("Kavanagh"), Defendant Saki, LLC's bookkeeper. [Id. at ¶ 34; Dkt. 34-1]. Kavanagh confirmed the existence of the time and pay records Plaintiff had requested, identified their location, and confirmed Defendant Schnitzer's involvement with these records. [Dkt. 29-20 at ¶ 35; Dkt. 34-1].

Meanwhile, on January 28, 2022 (at 4:55 PM on a Friday), Attorney Hurrie got back in touch with Attorney Fisher in order to serve Defendants' first discovery requests on Plaintiff, as well as to notice Plaintiff's deposition to take place on February 1, 2022 at 2:00 PM—the same day as the deadline for close of fact discovery. [Dkt. 29-20 at ¶¶ 37–39]. This timing caused Plaintiff to have only about one and a half business days to prepare and required him to do so absent *any* discovery responses from Defendants. [Dkt. 29-20 at ¶ 40].

During a telephone discovery conference between the parties on January 31, 2022, regarding Plaintiff's impending motion for default judgment, Attorney Hurrie represented that the outstanding issue with discovery production pertained to difficulties obtaining an original

6

signature from Defendant Schnitzer, to which Attorney Fisher replied that Plaintiff would accept an electronic signature. [Dkt. 29-20 at ¶¶ 43–44]. When asked "whether Attorney Hurrie had documents to produce and whether they would be produced by the discovery deadline of February 1, 2022[,] Attorney Hurrie was unable to provide assurance to either question." [Id. at ¶ 44]. Attorney Fisher then warned Attorney Hurrie again that Plaintiff would be filing a motion for default judgment on February 2, 2022, if Defendants still had not complied with this Court's order [Dkt. 26] granting Plaintiff's motion to compel by the deadline of February 1, 2022. [Dkt. 29-20 at ¶ 45].

At 5:37 PM on February 1, 2022, Attorney Hurrie finally submitted the first and only discovery responses from Defendants to date. [Id. at ¶ 46]. These consisted of "unsigned and incomplete answers to interrogatories" for both defendants, with numerous answers consisting primarily of a statement that the answer would "be supplemented, if necessary," and accompanied by no document productions whatsoever. [Id. at ¶¶ 46–48]. With regard to the document productions, Attorney Hurrie provided yet another assurance: "documents with [sic] our client's care custody and control [sic] are being assembled and will be forwarded to you once completed." [Id. at ¶ 48]. On the heels of false promises—not to mention having given Defendants ample warning, Plaintiff filed the instant Motion for Default Judgment as Sanction [Dkt. 28] on February 2, 2022.

As is this Court's practice, a status conference had been scheduled for shortly after the expected close of fact discovery, to take place on February 3, 2022, at 3:00 PM. [See Dkts. 23, 27, 32]. At 12:52 PM that same day—just two hours before the Court conference that had originally been scheduled back in November 2021, Attorney Hurrie filed a "status report" [Dkt. 30], in which he cited caselaw pertaining to productions involving millions of documents in

antitrust cases, and repeatedly referred to Defendants' "limited resources" as basis for the delays. [Id. at 1–2]. The Court held the status conference as scheduled, during which it heard the parties on case status and their respective discovery efforts and positions, and set a briefing schedule for opposition and reply pertaining to Plaintiff's motion for default. [See Dkt. 32]. Defendants subsequently timely filed their opposition [Dkt. 33] on February 16, 2022, and Plaintiff timely filed his reply [Dkt. 34] on February 23, 2022.

In anticipation of ruling on Plaintiff's motion, on August 31, 2022, the Court issued an order [Dkt. 35] requesting a status report from Plaintiff, in which Plaintiff was directed to "inform the Court as to whether any additional discovery has been produced by Defendants to date since the time of Plaintiff's filing of his [] Reply brief on February 23, 2022, and, if so, [to] detail the contents of such discovery and what requests remain outstanding" [id.]. On September 1, 2022, Plaintiff filed a status report [Dkt. 36] in compliance with this order, stating that, in the months since the filing of Plaintiff's reply, "the Defendant [sic] has not produced any additional responses to the Plaintiff's discovery requests," before listing the remaining outstanding requests [id.] (emphasis in original).

Upon receipt of Plaintiff's status report filed with the Court, Defendants then moved for leave [Dkt. 37] to file their own status report, on the grounds that "Plaintiff's report is inaccurate in multiple respects and Defendants wish to respond with an accurate representation of discovery that has, in fact, been provided to date" [id.].[1] The Court granted Defendants leave to file [Dkt. 38], and on September 2, 2022, Defendants filed their own status report [Dkt. 39]. However, the majority of Defendants' status report simply recounts discovery responses that had already been

---

[1] The Court notes here that, in its order requesting a status report from Plaintiff, the phrase "to date" meant just that—the date the order was issued and docketed, which was August 31, 2022. To the extent Defendants rely on their production to Plaintiff on September 1, 2022 in an attempt to demonstrate good faith participation in discovery, the Court rejects such an argument.

8

produced to Plaintiff prior to February 23, 2022, while asserting that some of the requested documents do not exist. [Id.] With regard to discovery responses not provided prior to February 23, 2022, Defendants state that "[e]xecuted interrogatories and a formal response to document requests, following up on the documents actually produced, were provided on September 1, 2022," while some additional records "can be produced within twenty-one (21) days." [Id.]

## III. DISCUSSION

### a. Legal Standard

"Federal Rule of Civil Procedure 37(b) gives [] district court[s] a 'veritable arsenal of sanctions' for failure to comply with discovery orders." Crispin-Taveras v. Mun. of Carolina, 647 F.3d 1, 7 (1st Cir. 2011) (quoting Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007)). This arsenal includes default judgment. Rule 37 provides that, "[i]f a party or a party's officer . . . fails to obey an order to provide or permit discovery," one of the many remedies the Court may utilize is the "rendering [of] a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). Although default judgment is a severe sanction, it provides a "useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice." Crispin-Taveras, 647 F.3d at 7 (quoting Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir. 2009)). District courts have broad discretion in choosing what, if any, sanctions to apply. See Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 37 (1st Cir. 2012) ("[a] court faced with a disobedient litigant has wide latitude to choose from among an armamentarium of available sanctions").

9

The appropriateness of default sanctions is evaluated on a "case by case basis" implicating the "totality of the circumstances." Id. at 38. Accordingly, when reviewing a Rule 37 motion for sanctions, this Court considers a "non-exhaustive" list of substantive and procedural factors. AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 435 (1st Cir. 2015). On the substantive side, these may include "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." Id. Procedurally, factors may include "whether the district court gave the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of such a penalty." Id. Overall, "these factors require a court to balance the desirability of resolving cases on the merits against the importance of 'the orderly and efficient administration of justice.'" Hooper-Haas, 690 F.3d at 38 (quoting Vallejo v. Santini–Padilla, 607 F.3d 1, 8 (1st Cir.2010)).

### b. Analysis

Short of simply ignoring *all* communications from Plaintiff's counsel and this Court, it is difficult to imagine a more "obstructionist adversary," Crispin-Taveras, 647 F.3d at 7, than the Defendants here. The extensive history of Plaintiff's attempts to confer with defense counsel and make arrangements to complete discovery provides crucial context to Defendants' ultimate failure to comply with the Court's order compelling discovery responses [Dkt. 24]; and the circumstances of Defendants' conduct in this matter necessitate the granting of default judgment as sanction.

Examining the "totality of the circumstances" as per the standards set forth by Hooper-Haas, 690 F.3d at 38, and AngioDynamics, 780 F.3d at 435, this Court finds numerous substantive and procedural factors supporting the appropriateness of default as sanction against Defendants. And contrary to Defendants' assertion that the sanction of default is "usually limited… most typically for fraud on the court in the form of falsifying or destroying evidence" [Dkt. 33 at 5], there is no such standard. Substantively, Defendants missed a total of seven discovery deadlines and extensions that had been either coordinated with or offered by Plaintiff, yet never once reached out to Plaintiff's counsel to request an extension before a deadline had passed, nor moved this Court for an extension of the pretrial schedule. Additionally, upon facing difficulty obtaining a physical signature from Defendant Schnitzer on interrogatory responses, Defendants did not proactively inquire as to whether Plaintiff would accept an electronic signature or if he would otherwise prefer to at least receive the unsigned interrogatory responses in advance of defense counsel's ability to obtain the requisite signatures. Defendants' proffered excuse for this failure is weak; they claim that Defendant Schnitzer was, at the time of filing of the opposition to the instant motion, "presently out of the country," yet that defense counsel was "working on obtaining Defendant's electronic signature" [Dkt. 33 at 4]. This is an entirely inadequate explanation. It provides nothing specific as to precisely why Defendant Schnitzer's status of being out of the country somehow precluded his providing an electronic signature—nor why defense counsel was somehow able to communicate with Defendant Schnitzer overseas (and he was able to sit for a remote deposition), yet simultaneously unable to obtain something as simple as an electronic signature.

In addition to the substantive factors—namely, Defendants' lack of mitigating or valid excuses, combined with their repeated violations and delays, see AngioDynamics, 780 F.3d at

435, the procedural facts of this case similarly warrant default judgment for Plaintiff as sanction. Pursuant to the tests set forth by Hooper-Haas, 690 F.3d at 38, and AngioDynamics, 780 F.3d at 435, Defendants have certainly received "notice of the possibility of sanctions and [an] opportunity to explain [their] misconduct and argue against the imposition of such a penalty," id. In fact, Defendants here had the opportunity to do so not only in their opposition filing [Dkt. 33] to the present motion, but also in their two (unsolicited, yet nonetheless considered) status reports—one [Dkt. 30] submitted to this Court just before the status conference held on February 3, 2022, and the other [Dkt. 39] submitted on September 2, 2022, after the Court had requested an update from Plaintiff as to whether Defendants had produced anything additional in the months since the last filing.

Attorney Fisher began warning Defendants of Plaintiff's intent to file a motion for default judgment if they did not comply with this Court's order compelling discovery [Dkt. 26] by the February 1, 2022 deadline as early as January 19, 2022 [Dkt. 29 at 4; Dkt. 29-20 at ¶ 30], and again on January 31, 2022 [Dkt. 29-20 at ¶ 45]. Accordingly, Defendants not only had notice of the possibility of such a motion being filed, but they also had plenty of time to either comply with their discovery obligations and this Court's order or to file a motion seeking an extension of the pretrial schedule. That they did neither, yet have nonetheless had three opportunities to explain their failures to this Court [see Dkts. 30, 33, 39], indicates that the procedural factors to be considered on such a motion weigh entirely in Plaintiff's favor.

In short, there were many, many opportunities for Defendants to help move discovery along, despite their supposed difficulties with the process, and to participate in a good faith process with Plaintiff and his counsel—which, based on the record before this Court, would almost certainly have resulted in Plaintiff's agreeability to additional extensions and

compromise. That Defendants in this matter instead chose silence and defiance in the face of Attorney Fisher's repeated requests for discovery and follow-ups regarding scheduling and extensions, indicates to this Court that they likely never truly intended to meaningfully participate in this litigation. And such attempts to evade our civil justice system through endless delay cannot stand.

Defendants' opposition filing to the instant motion repeatedly cites to caselaw emphasizing the district court's discretion with regard to sanctions and imposition of default judgment as such. [See Dkt. 33]. Yet it is precisely this discretion that the Court applies here, and which only supports imposition of default judgment as sanction in a case presenting such circumstances and history. As purported support for a denial of Plaintiff's motion for default, Defendants' opposition filing [Dkt. 33] and their status report [Dkt. 30] filed just before the February 3, 2022 status conference are both comprised in large part of discussion of specific caselaw involving massive discovery productions—nearly all of which pertains to antitrust litigation. [See Dkt. 33 at 2–3; Dkt. 30 at 1]. Obviously, such cases and situations are entirely inapposite to the situation here. This case involves a single plaintiff against his employer, and seeks damages related to his lost wages and benefits for a discrete period of time (namely, summer 2020). [See Dkt. 12, Am. Compl.]. In fact, it would seem to demonstrate Defendants' total lack of justification for their failure to participate in discovery and to comply with this Court's order [Dkt. 26] that their filings rely only on types of litigation that are wholly distinct from anything applicable to the case at bar.

Defendants have also claimed that although Plaintiff's discovery requests are "quite taxing," they have nevertheless "not argued that Plaintiff's discovery requests are overbroad, or not designed to lead to relevant, responsive information." [Dkt. 33 at 4]. Similarly, in their recent

status report [Dkt. 39] of September 2, 2022, Defendants state that "counsel questions the relevance" of certain employee records for time periods beyond that for which they were already produced—yet Defendants nonetheless state that now, "these documents can be produced within twenty-one (21) days"—with no explanation for why this has not been done at any earlier time in this litigation. [Id.] It is curious that Defendants would choose to emphasize such a point at this stage—for it seems rather obvious to the Court that the absence of any such motions challenging Plaintiff's requested discovery, particularly in conjunction with Defendants' near total silence and failure to produce for almost the entire duration of this case, is only further evidence of stonewalling and sanctionable conduct.

Fair and full litigation, where determination of the truth through discovery is a critical process, inherently cannot occur if one or more parties to the dispute simply refuse to participate. The Court finds Defendants' explanations for their delays to be weak at best—and potentially outright dishonest at worst.

While this Court of course can only speculate as to Defendants' possible motives for their conduct regarding discovery, it is not difficult to understand how such obstructionist delay tactics could benefit litigants like the Defendants here. Plaintiff has brought a case alleging rather straightforward claims of retaliation in connection with unpaid wages—one which, were discovery to have actually been properly conducted, would likely be relatively easily proved or disproved. As such, Defendants' extreme stonewalling with production of records as simple as employee payroll certainly gives at least the appearance of an intentional attempt to keep Plaintiff from litigating (and therefore potentially proving) his case.

"[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct

may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. . . ." Affanato v. Merrill Bros., 547 F.2d 138, 140–41 (1st Cir. 1977) (quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976)). The fact that Defendants in this action only provided signed interrogatories and a formal response to document requests on September 1, 2022, over six months since the last filing in this case—and that they did so one day after the Court had requested a status report from Plaintiff—makes clear they are precisely the type of litigants contemplated by Affanato and National Hockey League.

It is patently unfair to expect Plaintiff to fully litigate his claims absent any participation from Defendants in the discovery process. Defendants have clearly shown they are unwilling to participate in the discovery process in good faith and in compliance with court orders. Defendants' conduct necessitates the imposition of default as sanction in this matter. The Court understands that the restaurant industry took a hit amidst the Covid-19 pandemic, and that attorney workloads can certainly be demanding. Nevertheless, these realities in no way excuse Defendants' repeated failures to respond or the severity of their dereliction of duty in this matter. Accordingly, default judgment as sanction is warranted in this case.

### IV. CONCLUSION

In summary, Plaintiff Travis Costa's Motion for Default Judgment as Sanction [Dkt. 28], including his request for reasonable attorneys' fees and costs associated with bringing the motion, is **GRANTED**. The Court thereby **ORDERS THE ENTRY OF DEFAULT JUDGMENT** for the Plaintiff against Defendants Saki, LLC and Steven Schnitzer. Within 30 days of the date of this Order, counsel for Plaintiff shall file a motion for the assessment of

Case 1:21-cv-10154-AK   Document 40   Filed 09/14/22   Page 16 of 16

damages in this matter with supporting affidavits, including computation of the attorneys' fees and costs Plaintiff incurred in connection with this motion and supporting evidence. Upon Plaintiff's filing of such motion, the Court will schedule a hearing on damages pursuant to Fed. R. Civ. P. 55(b)(2).

**SO ORDERED.**

September 14, 2022                                        /s/ Angel Kelley
                                                          ANGEL KELLEY
                                                          U.S. DISTRICT JUDGE

16